## ARTHUR *v.* BALCH.

23  157
68  312

Where a servant is in the performance of, and is entrusted with, the ordinary business of his master, the latter is chargeable in trover, for a wrongful conversion by the servant.

The mere fact that the wrong-doer is the servant of the defendant, is not enough to charge him in trover, but he must be shown to have been in some way connected with the transaction.

The plaintiff having title to a horse under a mortgage, the animal was found in the possession of one George, who had given a receipt for him to the sheriff. The defendant had a contract upon the Concord and Claremont railroad, and the horse was used about the work, and George acted as agent for the defendant. The plaintiff demanded the horse of George, who refused to give him up, referring the plaintiff to the sheriff. It did not appear that the sheriff had proceeded according to the provisions of chap. 184, § 15, Rev. Stat., relating to the attachment of property mortgaged. *Held* that the defendant was liable in trover for the conversion of the horse by George.

TROVER, for a horse.

It appeared, that on the seventh of February, 1849, George Melvill of Concord, owned the horse in question, and then made a mortgage of him to the plaintiff, to secure a note of eighty dollars and interest, which was duly executed and recorded.

A witness testified that he knew this horse, while in the possession of Melvill. In the winter of 1849, he thought, he went to Warner, in company with the plaintiff, and found the horse there in the possession of one George, who had receipted for him. The plaintiff then stated that the horse was his property, and demanded the horse. George would not let him have the horse, but told him he must go to the sheriff. The witness waited, while the plaintiff went to the sheriff, but he could not get the horse, and the plaintiff did nothing further after he came back, but left the horse there.

Another witness testified that the defendant, in 1849, had a contract upon the Concord and Claremont railroad, and the witness worked there for him. He knew the horses employed on Balch's job, and the horse in question was worked in grading upon his work. He was present when Arthur came to demand

the horse, and heard the demand made. He said George acted as agent for Balch, and receipted for this horse after he was attached. The witness supposed the persons who had the horse were agents of Balch, because when the Irishmen threatened to strike for higher wages, Balch called round and spoke to Plumb, the "boss," to have the men set up their shovels, and Balch then told the hands, that if they struck for higher wages, he would not pay them any more. This showed, he said, that Balch was over the "boss," who was over the other hands.

Upon this evidence, the counsel for the defendant raised the question, whether the evidence was sufficient to entitle the plaintiff to a verdict. The plaintiff's counsel contended that independent of the demand and refusal, the evidence showed a title in the plaintiff, and a possession and use of the horse by the defendant, and this was not contested by the defendant's counsel.

The court however directed a verdict for the defendant, subject to the opinion of the superior court upon the case, which verdict the plaintiff moved to set aside.

*H. B. Chase,* and *Dana,* for the plaintiff.

*Samuel M. Wheeler,* for the defendant.

There is no evidence in the case, of a conversion by the defendant.

The plaintiff held his title by virtue of a mortgage from one Melvill, which gave him the legal title, but the equity of redemption remained in the mortgager, and he might sell his right and the vendee lawfully take and hold possession of the horse until a demand was made. *White* v. *Phelps,* 12 N. H. Rep., 385.

If, therefore, the pretended possession and use had been established, it does not appear that it was wrongful. *Hyde* v. *Noble,* 13 N. H. Rep., 495; *Sanborn* v. *Coleman,* 6 N. H. Rep., 14; *Seaver* v. *Dingley,* 4 Greenl. Rep., 316; *Galvin* v. *Bacon,* 2 Fairf. Rep., 28; *Thurston* v. *Blanchard,* 22 Pick., 18; *Stevens* v. *Austin,* 1 Met. Rep., 557; Wheaton's Selw, 1412.

The demand proved, was upon one George, and not upon the defendant.

The refusal of the agent, without showing the direction of the principal, is no evidence of a conversion. *White* v. *Demary*, 2 N. H. Rep., 546 ; *Woods* v. *Banks*, 14 N. H. Rep., 101.

But George had receipted for the horse, and at the time of the demand upon him, held the horse as receipter, and not as agent for the defendant.

But admitting the demand, possession and use, and that the horse was attached as the property of the defendant, his refusal to deliver him would not constitute a conversion, for the horse then being under an attachment, he had not the power of compliance. *White* v. *Phelps*, 12 N. H. Rep., 385.

*Pierce* and *Minot*, on the same side.

1. There is no evidence that the horse was ever in the possession of the defendant; on the contrary, the evidence is express, that he was actually in the possession of George.

It does not appear that George attempted, in this matter, to act for the defendant, or that he gave anything but his own receipt for the horse.

If he did, there is no evidence of any authority from the defendant. The evidence that George was the defendant's agent in the work, is no proof of any authority in this matter. It does not appear that the defendant ever knew anything about it.

2. There is no evidence of any conversion by any one, nor is any tortuous taking shown in the first instance.

The possession and use of the horse unexplained, might perhaps be evidence of a conversion, as a presumption of a claim of title in him. But the circumstances rebut all such presumptions, in this case. It clearly appears that George never claimed any title to the horse.

The refusal of George to let the plaintiff have the horse, when demanded, was, under the circumstances, no proof of a conversion. Knowing nothing about the title to the horse, he referred the plaintiff to the sheriff from whom he had received him. The conduct of George seems to have appeared reasonable to the

plaintiff, as he applied to the sheriff, without further trouble to George. *Robinson* v. *Burleigh*, 5 N. H. Rep., 225 ; *Fletcher* v. *Fletcher*, 7 N. H. Rep., 452.

GILCHRIST, C. J.   It was formerly held where goods were converted by a servant, at the command or by the direction of his master, that no action would lie against the servant, but against the master only.   *Mires* v. *Solebay*, 2 Mod., 242.   But this doctrine is no longer held to be law.   In the case of *Stephens* v. *Elwell*, 4 M. & S., 259, it was decided that a servant might be charged, in trover, although the act of conversion were done by him for the benefit of his master.   In that case Lord *Ellenborough*, said " a person is guilty of a conversion who intermeddles with my property and disposes of it ; and it is no answer that he acted under authority from another who had himself no authority to dispose of it."   It seems also from the case of *Duncan* v. *The Surrey Canal*, 3 Starkie, 50, that the agent of an incorporated company, acting under the direction of a committee for managing the affairs of the company, may be guilty of a conversion.

But unless there be evidence to connect the defendant with the transaction, he cannot be charged.   To prove a conversion of a quantity of bricks, it was shown that some men fetched them away in a cart ; and on being asked by the witness why they did so, they said, they were ordered by their master, Mr. Wood. It appeared that the name " James Wood," was painted on the cart.   On this evidence the court held that there was nothing to connect the defendant with the transaction.   *Everett* v. *Wood*, 1 C & P., 75.   So in the case of *Barnard* v. *How*, 1 C. & P., 366, a horse was kept at the defendant's stables, and one day when he was from home, three or four of his servants, being in charge of the premises, the horse was taken away. The defendant blamed his ostlers for letting it be taken, but on being himself remonstrated with, replied, that it was of no consequence, because he was indemnified.   The court held, that the horse appeared, on the evidence, to have been taken away without the knowledge or assent of the defendant, and that he was not guilty of a conversion.

Arthur *v.* Balch.

But although the defendant must be connected with the trans-action, in order to be chargeable with a conversion, he need not have given his servant an express direction to commit the act in question. It is enough to charge him if the servant be in the performance of, and be intrusted with, the ordinary business of his master. In the case of *Jones* v. *Hart,* 2 Salkeld, 441 ; 1 Lord Raym., 738, a pawnbroker's servant took a pawn, and the pawner came and tendered the money to the servant, who said the goods were lost or sold. *Holt, C. J.,* held that trover would lie against the master. So in *Dench* v. *Walker,* 14 Mass. Rep., 500, it was held, where the defendant undertook to transport rum for the plaintiff, and on the journey it was adulterated, ei-ther by himself or his servant, that trover would lie either against him or the servant. So in *Rooke* v. *The Midland Railway Company,* 14 Law & Eq. Rep., 175, a demand of goods made upon the station master, at the station where the goods were, and a refusal, was held to be evidence of a conversion by the de-fendants.

The case finds that the defendant did not deny that the evi-dence showed a title in the plaintiff, and a possession and use of the horse by the defendant. The only question then seems to be whether the act of George could make the defendant liable in trover. The defendant had a contract upon the Concord and Claremont railroad, and George acted as his agent, and the horse was used about the work. George's reference to the sheriff was of no avail, because it does not appear that the sheriff had any authority to dispose of the horse. The case does not find that he had complied with the provisions of ch. 184, § 15, Rev. Stat., relating to the attachment of property mortgaged. Being then the agent of the defendant, in the transaction of his ordinary business, and having the possesion and use of the horse, in the performance of it, the defendant is, upon the authorities, liable in trover for the act of his servant.

*Verdict set aside.*